# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MARY D. GARDNER,

     Plaintiff

v.

ANDREW SAUL,
Acting Commissioner of
Social Security Administration,

     Defendant

Case No.: 2:18-cv-00485-WGC

**Order**

Re: ECF Nos. 15, 16

Before the court is Plaintiff's Motion for Reversal and/or Remand. (ECF No. 15) The Acting Commissioner filed a Cross-Motion to Affirm and Opposition to Plaintiff's motion. (ECF No.16.) Plaintiff filed a reply. (ECF No. 17.) When Plaintiff filed this action the Acting Commissioner of the Social Security Administration was Nancy Berryhill. The current Acting Commissioner is Andrew Saul, and the caption reflects this change.

This action was randomly reassigned to the undersigned as magistrate judge on October 15, 2019. The parties subsequently consented to the undersigned handling the case for all purposes, and it was reassigned as such on January 15, 2020. (ECF No. 21.)

The court issues the instant order denying Plaintiff's motion for reversal and/or remand, and granting the Acting Commissioner's cross-motion to affirm.

## I. BACKGROUND

On February 11, 2016, Plaintiff completed applications for disability insurance benefits (DIB) under Title II of the Social Security Act and for supplemental security income (SSI) under Title XVI of the Social Security Act, alleging disability beginning March 1, 2015.

(Administrative Record (AR) 207-222.) The applications were denied initially and on reconsideration. (AR 142-148.)

Plaintiff requested a hearing before an administrative law judge (ALJ). ALJ John Cusker held a hearing on May 19, 2017. (AR 37-73.) Plaintiff, who was represented by counsel, appeared and testified on his own behalf at the hearing. Testimony was also taken from a vocational expert (VE). On September 6, 2017, the ALJ issued a decision finding Plaintiff not disabled. (AR 7-21.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. (AR 1-3.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Plaintiff argues: (1) the ALJ's step four finding is legally insufficient because the ALJ failed to address probative evidence demonstrating that the VE's testimony was inconsistent with the Dictionary of Occupational Titles (DOT); and (2) the ALJ failed to properly consider the medical opinion evidence of Plaintiff's treating providers, Dr. R.D. Prabhu and physician's assistant (PA) Jesse Connors.

The Acting Commissioner, on the other hand, argues that: (1) the ALJ properly relied on the VE's testimony to find Plaintiff could perform her past relevant work; and (2) the ALJ properly weighed the medical opinion evidence.

## II. STANDARDS

### A. Disability Process

After a claimant files an application for disability benefits, a disability examiner at the state Disability Determination agency, working with a doctor(s), makes the initial decision on the claimant's application. *See* 20 C.F.R. §§ 404.900(a)(1); 416.1400(a)(1). If the agency denies the claim initially, the claimant may request reconsideration of the denial, and the case is sent to a

different disability examiner for a new decision. *See* 20 C.F.R. §§ 404.900(a)(2), 416.1400(a)(2). If the agency denies the claim on reconsideration, the claimant may request a hearing and the case is sent to an ALJ who works for the Social Security Administration. *See* 20 C.F.R. §§ 404.900(a)(3), 416.1400(a)(3). The ALJ issues a written decision after the hearing. *See* 20 C.F.R. § 404.900(a)(3). If the ALJ denies the claim, the claimant may request review by the Appeals Council. *See* 20 C.F.R. §§ 404.900(a)(4), 416.1400(a)(4). If the Appeals Council determines there is merit to the claim, it generally remands the case to the ALJ for a new hearing. If the Appeals Council denies review, the claimant can file an action in the United States District Court. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairment(s) are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment(s) that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*,

622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitation(s), and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and 416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the

testimony of a VE or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).[1]

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**C. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical

---

[1] The Grids contain various combinations of factors that direct a finding of disabled or not disabled.

testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff met the insured status requirements through December 31, 2017. While she did engage in substantial gainful activity from the alleged onset date through March 1, of 2016 (and is therefore precluded from being found disabled between March 1, 2015 and March 1, 2016), there was a continuous 12-month period during which she did not engage in substantial gainful activity and the decision addresses that period. (AR.12-13)

At step two, the ALJ concluded Plaintiff had the following severe impairments: chronic neck and back pain, unspecified mood disorder, somatoform disorder, and borderline intellectual functioning. (AR 13.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 13-14.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform medium work except: she can lift/carry 50 pounds occasionally and 25 pounds frequently; she can sit, stand and/or walk for about six hours in an eight-hour workday, with normal breaks; she should avoid concentrated exposure to fumes, odors, poor ventilation, and chemicals; she has the mental RFC to complete simple and some detailed tasks with adequate persistence and pace; she can interact appropriately with the general public and supervisors in brief, infrequent, or non-intensive encounters; and, she can adapt to routine changes consistent with a simple work setting. (AR 14.)

The ALJ then concluded Plaintiff's past relevant work included: a composite job at White Castle comprised of janitor, fast food worker, and fast food cook; a home health aide, and a cashier/checker. The ALJ found, based on the VE's testimony, that Plaintiff had the RFC to perform her past relevant work, as actually performed, and as generally performed in the national economy. (AR 20.)

As a result, the ALJ found Plaintiff not disabled. (AR 20.)

**B. Past Relevant Work**

The ALJ posed a hypothetical to the VE with the RFC adopted in the decision, that included a mental RFC limitation that the person could interact appropriately with the general public and supervisors in brief, infrequent, or non-intensive encounters. (AR 67.) The VE specifically testified that this would fit the cashier checker job. (*Id.*) When the ALJ asked about the home health aide job, the VE responded, "It could be if it's just a not necessarily, more of working with an elderly person, not providing medical monitoring, et cetera." (*Id.*) The ALJ then asked Plaintiff what type of work she previously did as a home health aide. (*Id.*) She responded that she did "light duty work like vacuum the floor" for disabled and elderly persons. (*Id.* at 67-68.) The VE then stated: "--the home health aide is trending that way as baby boomers age, they

8

need someone to come in and do the light cleaning, run errands possibly." (*Id.* at 68.) The ALJ then asked, "So, is that consistent with brief, infrequent, or non-intensive encounters?" The VE responded: "I think it can be, that's why it would not be for someone who is providing more intensive work for somebody who is an invalid, significantly disabled, bedridden --." (*Id.*) The VE confirmed that was not the type of home health aide the VE was relying on. (*Id.*)

With respect to the composite job (janitor, fast food worker, fast food cook), the VE testified: "Well, if you take the cook to be non-complicated, if she just worked the grill, then as performed, those, I think those would be within those restrictions." (*Id.* at 68-69.) In response to questioning from Plaintiff's counsel, the VE confirmed that a fast food cashier or counter person would encompass the brief or non-intensive encounters limitations. (AR 73.)

According to Plaintiff, on June 15, 2017, 27 days after the hearing, but over two months before the ALJ issued his decision, Plaintiff submitted the curriculum vitae and vocational report of Kerri Moran, a vocational rehabilitation counselor. (*See* AR 333-338.) According to the report, Ms. Moran was tasked by Plaintiff's counsel to determine whether Plaintiff could perform her past relevant work as a home health aide, cashier, or fast food worker with the limitation of brief, infrequent, or non-intensive interaction. (AR 333.)

First, Ms. Moran set forth the description for home health aide from the DOT, and then concluded that this occupation includes frequent, ongoing and intensive interactions with others. "Many times the home health care aide is responsible for assisting their patients with personal hygiene, as well as into and out of a bathtub or shower. The work can be very intimate, therefore intensive." (AR 333.)

Second, she addressed the cashier position and set out the DOT description of that occupation. She concluded that this occupation involves constant interaction with others.

"Although this interaction may be brief with each customer, the ongoing nature of the interactions would constitute frequent interaction." (AR 334.)

Third, she addressed the fast food worker occupation, and set forth the description from the DOT. She quoted from a study, and concluded: "In today's economy, 'fast food workers are the initial contact between customers and fast food establishments. They are responsible for ensuring customer satisfaction, resolving customer complaints, and addressing any questions or comments that customers may have. Fast food workers perform many tasks. They take customers' orders, assemble the orders, and act as cashiers.'" (AR 334, citing http://study.com/articles/Fast_Food_Worker_Job_Description_Duties_and Requirements.html.) She stated: "This work inherently requires that the employee frequently interact with others, often in fast paced, intense situation." (AR 334.)

In sum, Ms. Moran concluded that the work of a home health aide, cashier and fast food worker all involve ongoing, frequent, and often times very intensive interactions with others, and so a person with Plaintiff's mental RFC would be unable to perform these jobs. (AR 335.)

Plaintiff argues that the ALJ erred because the ALJ never even acknowledged this evidence in his decision. Plaintiff further contends the error is harmful because Ms. Moran's report demonstrates a conflict the ALJ was required to resolve. Plaintiff asserts that the ALJ failed to ask the VE if the testimony was consistent with the DOT, and if so, elicit a reasonable explanation.

The Acting Commissioner argues that the ALJ properly relied on the VE's testimony in determining Plaintiff could perform her past relevant work.

Insofar as Plaintiff argues that the ALJ erred in not explicitly addressing Ms. Moran's report in the decision, the Acting Commissioner contends that the ALJ need only discuss

evidence that is "significant" and "probative" and Ms. Moran's report was neither. The Acting Commissioner points out that Ms. Moran relies on how the jobs are generally performed, based on the DOT descriptions, but the VE and ALJ found that Plaintiff could perform her past relevant work both as generally performed and as *actually* performed.

If a Social Security claimant can still do past relevant work, he or she is not disabled. 20 C.F.R. § § 404.1520(f) and 416.920(f).To determine whether Plaintiff can return to his past relevant work the ALJ must ascertain the demands of the former work and compare it to the present capacity. 20 CFR 404.1520(e), 416.920(e); *Pinto v. Massanarii,* 249 F.3d 840, 844-45 (9th Cir. 2001). The claimant must be able to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; *or*
>
> 2. The functional demands and job duties of the occupation generally required by employers throughout the national economy.

*Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (quoting SSR 82-61) (emphasis added).

Assuming that Ms. Moran's report was significant and probative evidence, the court finds that any error in failing to consider it is harmless, because the ALJ relied on the VE's testimony that the claimant could perform the past relevant work as generally performed in the national economy and also as *actually* performed the work. Ms. Moran's report only addresses how her past relevant work is *generally* performed in the national economy, according to the DOT descriptions.

The court agrees that the ALJ also adequately explored any inconsistency with the DOT with the VE. With respect to the home health aide occupation, the ALJ specifically asked the Plaintiff what kind of work she did, and she testified: "I cooked for them and just did light duty work like vacuum the floor." (AR 67.) She testified that she worked with disabled and elderly people. (AR 68.) The VE then testified that this occupation was trending this way as baby

boomers age, explaining that "they need someone to come in and do light cleaning, run errands possibly." (AR 68.) The ALJ then asked whether that was consistent with "brief, infrequent or non-intensive encounters" and the ALJ responded: "I think it can be." (AR 68.) The VE went on to state that this might not apply if the work was being done for the "significantly disabled" or "bedridden." Plaintiff's testimony was that she did work for disabled and elderly, and that it was cooking or light cleaning such as vacuuming. There was no indication that it was for the significantly disabled or bedridden, or that it involved frequent or intense encounters. This is sufficient to affirm the ALJ's finding that she could perform her past relevant work.

## C. Medical Opinion Evidence

### 1. Standard

"Courts 'distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physician); and (3) those who neither examine nor treat the claimant (nonexamining physicians).'" *Garrison*, 759 F.3d at 1012 (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).

The Social Security Administration amended its regulations regarding the evaluation of medical evidence for claims filed on or after March 27, 2017, so that there is no longer a hierarchy for treating, examining or non-examining sources for those cases. *See* 20 C.F.R. § 404.1520c(a), 416.920c(a). This claim was filed before March 27, 2017; therefore, the new regulations are not applicable. For claims filed before March 27, 2017, 20 C.F.R. §§ 404.1527 and 416.927 govern how an ALJ must weigh medical evidence. Those regulations afford "treating sources" controlling weight in certain circumstances. *See also* Social Security Ruling (SSR) 96-2p, 1996 WL 374188

(July 2, 1996).[2] Even when the treating sources are not given controlling weight, they are still entitled to deference. *Id.*

The Ninth Circuit has similarly held that "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted). "[T]he opinion of a treating physician is thus entitled to greater weight than that of an examining physician, [and] the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Id.* (citation omitted). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be] given controlling weight." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (citation and quotation marks omitted); *see also Revels v. Berryhill*, 874 F.3d 648, 854 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)). "The weight afforded a non-examining physician's testimony depends on the degree to which [he or she] provide[s] supporting explanations for [his or her] opinions." *Garrison*, 759 F.3d at 1012 (citation and quotation marks omitted).

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). To reject a treating or examining doctor's opinion that is contradicted by another doctor's opinion, the ALJ must "provid[e] specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012

---

[2] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, in the Ninth Circuit they are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

(citation and quotation marks omitted). "Where an ALJ does not explicitly reject a medical opinion or set forth specific legitimate reasons for crediting one medical opinion over another, he errs." *Garrison*, 759 F.3d at 1012 (emphasis added).

**2. Dr. Prabhu & PA Connor's Opinions**

Dr. Prabhu and PA Connors, submitted a treating source statement regarding Plaintiff's physical conditions. (AR 609-612.) The statement indicates that they had treated Plaintiff as needed since October 18, 2016. Her diagnoses included: hypertension, low back pain, neck pain, hyperlipidemia, vitamin D deficiency, and prior history of head trauma. The form states that Plaintiff is likely to be off task 15 percent of the time in a typical workday, and she is likely to be absent from work an average of two days per month. (AR 609.) She could frequently lift/carry up to 10 pounds and occasionally lift/carry 20 pounds due to her cervical and lumbar spine issues. She could stand and walk two hours in an eight-hour workday, and sit for six hours, with the option to sit/stand at will. (AR 610.) She could occasionally reach bilaterally, and frequently handle, finger, feel, push and pull. She could occasionally use foot controls bilaterally. She could occasionally climb ramps and stairs, but never climb ladders and scaffolds. She could rarely crawl. She could occasionally stoop, kneel, crouch and rotate her head and neck. (AR 611-12.) She could rarely be around unprotected heights, moving mechanical parts, operate a vehicle, be around dust/odors/fumes/pulmonary irritants, extreme heat, and vibrations. She could occasionally be exposed to humidity and wetness. (AR 612.)

**3. Analysis**

The opinions of Dr. Prabhu and PA Connors are contradicted by the report of consultative examining physician David Mumford, MD, as well as the non-evaluating disability

reviewing physicians. Therefore, the ALJ was required to set forth specific and legitimate reasons supported by the record in order to reject their opinions.

Here, the ALJ accorded the check-the-box form no weight, stating that these providers had minimal clinical findings; Connors only saw her four times; the opinions were not supported by objective findings contained in their own treatment notes; and, the opinions were not supported by nor consistent with the findings and opinions of other doctors. (AR 19.)

These are specific and legitimate reasons supported by substantial evidence in the record.

First, the check the box form completed by these practitioners had no substantive supporting explanation. "While an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, …'the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions[.]" *Ford v. Saul*, --- F.3d ---, 2020 WL 829864, at *8 (9th Cir. 2020) (citing *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017), and quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)). In many instances when the form asked the provider to identify the particular medical or clinical findings that support the assessment of limitations and why the findings support the assessment, no response was given. When a response was given, it merely cited x-rays showing cervical and lumbar spine issues.

Second, the ALJ is correct that these providers only saw Plaintiff four times: October 18, 2016, October 24, 2016, December 15, 2016, and March 3, 2017.

Third, the ALJ accurately noted that the notes of Dr. Prabhu and PA Connors had minimal clinical findings, and the opinions are not supported by objective findings contained in their own treatment notes. In the four appointments, the only clinical findings are that Plaintiff had elevated blood pressure (but was in no acute distress) and had decreased range of motion in

her neck. These minimal notes do not support the degree of limitation opined on by these providers. "A conflict between a treating physician's medical opinion and his own notes is a 'clear and convincing reason for not relying on the doctor's opinion,' and therefore is also a specific and legitimate reason for rejecting it." *Ford v. Saul*, --- F.3d ---, 2020 WL 829864, at \*7 (9th Cir. Feb. 20, 2020) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). (9th Cir. 2012)).

Finally, the ALJ stated that the opinions were not supported by the other medical findings and opinions in the record. Plaintiff suffered a head injury at the workplace when a blade from a ceiling fan fell and struck her in the head on August 19, 2013. She was initially treated in the emergency room and was discharged with a prescription for Norco, with a CT showing no acute intracranial abnormality. (AR 544-49.) She was subsequently treated for pain in her neck with some tingling and numbness in the right upper extremity, pain in the low back, and intermittent headaches. She was initially referred to physiatrist Christopher A. Fisher, M.D., who performed a trigger point injection which provided minimal relief. When her symptoms remained the same she was treated with pain medications (non-steroidal anti-inflammatories and narcotics), muscle relaxers and topical creams, physical therapy, a home exercise program, ice and heat. She was initially assessed with a concussion, postconcussive syndrome and cervical strain. She saw neurologist Enrico Fazzini, D.O., Ph.D., who assessed her with some weakness in the arm and wrist, muscle spasm and tenderness in the cervical spine with reduced range of motion. An EMG revealed denervation of the muscles supplied by the right C6-7 nerve roots. He recommended an MRI of the brain, which showed evidence of a traumatic brain injury. He referred her for neuropsychological testing which revealed moderate impairment. It was noted that a history was needed to determine whether the deficits preexisted or arose from the accident.

A cervical spine MRI showed disc protrusion at C5-6 and disc bulge at C6-7. She was referred to Dr. Joseph Schifini for cervical epidural injections. After the first injection, she reported about 80 percent improvement. After the second injection, she indicated she had significant improvement in the right upper extremity pain and tingling. She still had intermittent headaches. She was put on amitriptyline for headaches. Several times in her treatment notes, it was indicated she was not working but was looking for another job. When she saw Mark O. Reed, MD, on August 21, 2014, he concluded that there were no objective findings warranting further workup or treatment. She saw Dr. Reed again on November 26, 2014, and he noted that she had requested a full duty work release.

On August 29, 2016, Plaintiff underwent an internal medicine evaluation with David Mumford, M.D., for her chief complaints of neck and back pain. Dr. Mumford indicated that Plaintiff was able to sit comfortably without shifting in a chair; could stand from sitting and go from sitting to a supine position without difficulty. She could get on and off the exam table without the footstool. She could turn her neck normally during the interview and examination, but when range of motion testing was done, she had a considerable amount of voluntary resistance to the testing. He found there was no evidence of paravertebral muscle spasm; the examination of the hands and shoulders was normal; she had good grip strength and fingering ability; her range of motion was within normal limits; palpitation to the back did not elicit complaints of pain; her straight leg test and squat were normal; and her gait was also normal. He concluded that her examination showed no loss of range of motion in the cervical or lumbar spine and there was no evidence of radiculopathy. He opined that she could lift/carry 50 pounds occasionally and 25 pounds frequently; she could stand, walk and sit for eight hours in an eight-hour workday; and had no postural restrictions. (AR 506-510.)

Based on a review of the record, the court finds that the ALJ's conclusion that the opinions of Dr. Prabhu and PA Connors were not supported by the other objective medical evidence or findings by other doctors is well supported.

In sum, the court finds that the ALJ set forth specific and legitimate reasons supported by substantial evidence in giving no weight to the opinions of these providers.

## IV. CONCLUSION

IT IS HEREBY ORDERED that:

(1) Plaintiff's motion for reversal and/or remand (ECF No. 15) is **DENIED**;

(2) The Acting Commissioner's cross-motion to affirm (ECF No. 16) is **GRANTED**; and

(3) The Clerk shall enter judgment accordingly.

Dated: March 12, 2020

William G. Cobb
United States Magistrate Judge